IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MACHELLE RENEA CHAMBERS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN COLVIN, Acting Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) | Case No. 2:12-CV-C-04251-REL-SSA |

## **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Machelle Renea Chambers seeks review of the final decision of the Commissioner of Social Security denying plaintiff's applications for disability benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) failed to rely of the medical opinions of her treating psychiatrist. I find that the substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

## *I.  BACKGROUND*

On April 5, 2006, plaintiff protectively applied for disability benefits and supplemental security income benefits alleging that she has been disabled since August 31, 2004 (Tr. 212-17, 218-22). When she filed her claims, plaintiff alleged disability due to a combination of physical and mental problems (Tr. 264). Plaintiff's applications were denied on July 10, 2006 (Tr. 151-56).

On June 27, 2007, a hearing was held before an ALJ (Tr. 48-82). On March 4, 2008, the ALJ found that plaintiff was not under a disability as defined in the Act (Tr. 127-44). On June 5, 2008, the Appeals Council granted plaintiff's request for review, vacated the March 4, 2008 decision, and remanded the case for further proceedings (Tr. 145-47).

On September 17, 2009, a hearing was held before a different ALJ (Tr. 83-124). That

same day, plaintiff amended her disability onset date to April 21, 2006 (Tr. 211). On July 30, 2010, the ALJ found that plaintiff is not under a disability as defined in the Act. (Tr. 24-44). On July 12, 2012, the Appeals Council denied plaintiff's request for review (Tr. 1-7). Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## II. STANDARD FOR JUDICIAL REVIEW

Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), respectively, provide for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving she is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). If the plaintiff establishes that she is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. and 416.901, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. §§ 404.1520 and 416.920 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

    Yes = not disabled.
    No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits her ability to do basic work activities?

    No = not disabled.
    Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

    Yes = disabled.
    No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

    No = not disabled.
    Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

    Yes = disabled.

No = not disabled.

## IV. THE RECORD

The record consists of the testimony of plaintiff and vocational experts at the June 27, 2007 and September 17, 2009 hearings, in addition to documentary evidence admitted at the September 17, 2009 hearing.

### A. ADMINISTRATIVE REPORTS

The record includes the following report showing plaintiff's earnings for the years 1983 through 2007:

| Year | Earnings | Year | Earnings |
|---|---|---|---|
| 1983 | $ 469.00 | 1996 | $ 8,954.78 |
| 1984 | 1,398.63 | 1997 | 3,733.80 |
| 1985 | 1,593.68 | 1998 | 241.14 |
| 1986 | 1,778.59 | 1999 | 2,201.07 |
| 1987 | 1,550.76 | 2000 | 2,240.42 |
| 1988 | 2,672.71 | 2001 | 1,789.95 |
| 1989 | 2,253.56 | 2002 | 663.68 |
| 1990 | 1,643.10 | 2003 | 7,141.21 |
| 1991 | 3,319.40 | 2004 | 11,188.15 |
| 1992 | 5,507.16 | 2005 | 1,683.64 |
| 1993 | 3,062.80 | 2006 | .00 |
| 1994 | 3,837.19 | 2007 | 3,102.13 |
| 1995 | 16,854.12 | | |

(Tr. 229).

### B. SUMMARY OF MEDICAL RECORDS

As summarized by plaintiff, the medical evidence reveals clinical signs and laboratory findings of both physical and mental impairments.

4

## C. SUMMARY OF TESTIMONY

At the June 27, 2007 hearing, testimony was taken from plaintiff and John F. McGowan, Ed.D., a vocational expert. At the September 17, 2009 hearing, testimony was taken from plaintiff and Gary Weimholt, M.S., a vocational expert.

### 1. Plaintiff's testimony

Plaintiff testified that her date of birth is November 20, 1967; she weighs 190 to 200 pounds; she stands 5'4" tall; she is right-handed; and she graduated from Lincoln University with a degree in Business Administration (Tr. 51-52, 89-91).

When questioned as to why she is unable to work, plaintiff reported pain all over her body due to her sickle cell. Plaintiff described bad days that occur at least three times a week during which she does not get out of bed. (Tr. 56, 72, 100-01). Plaintiff also said that she has back pain, that she broke her right ankle in three places a few months before the 2009 hearing, and that she is still experiencing numbness in her ankle (Tr. 102-05).

In addition to sickle cell, plaintiff testified that she has several mental problems. Plaintiff reported that she has been diagnosed with schizophrenia, that she hears voices, and that she sees things (Tr. 61-62, 63, 71, 99-101). Plaintiff said that she has been depressed for a long time, is sad, and cries daily (Tr. 72-74). Plaintiff described mind racing and insomnia (Tr. 68, 70, 101-02). Plaintiff testified that she previously self-medicated her insomnia with alcohol, but denied current abuse (Tr. 105-09).

### 2. Vocational experts' testimony

Two vocational experts testified at the administrative hearings: John F. McGowan, Ed.D., and Gary Weimholt, M.S.

The expert identified plaintiff's past relevant jobs as telemarketer, sales clerk, sales representative, administrative assistant, parcel-post clerk, laboratory assistant, teller, and electrical assembler. The expert classified these jobs as sedentary to heavy and semi-skilled to skilled (Tr. 116-17).

5

In 2007, the ALJ posed a hypothetical question with no exertional limitations. However, the hypothetical individual was limited to jobs with one-step or two-step instructions and in a low-stress environment with little social interaction. The expert opined that such a hypothetical individual could perform light, unskilled occupations including simple assembler in the garment industry, janitor, and order clerk (Tr. 77-80).

In 2009, the ALJ posed a hypothetical question limited to light work. The hypothetical individual could understand, remember, and carry out simple instructions and non-detailed tasks; could maintain concentration and attention for two hours segments over an eight-hour period; could demonstrate adequate judgment to make simple work-related decisions; and could respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others was casual and infrequent (Tr. 118). The expert opined that such a hypothetical individual could not perform any of plaintiff's past relevant jobs but could perform light, unskilled occupations including office cleaner, inspector/hand-packager, and small-parts assembler (Tr. 118-20).

When referred to plaintiff's testimony at the June 27, 2007 hearing and an August 9, 2006 *Medical Assessment Of Ability To Do Work-Related Activities-Mental* form completed by plaintiff's treating psychiatrist (Tr.397-98), the expert opined that the hypothetical individual would be unable to work (Tr. 80-81).

When the 2009 hypothetical question was modified to include a restriction to occasional handling, gross manipulation, fingering, and fine manipulation, or where the hypothetical individual would miss up to three days a month as a result of pain or depression, the expert opined that the hypothetical person would be unable to work (Tr. 121-22). Additionally, the expert opined that an inability to function emotionally and being bed-bound for five-to-eight days a month would eliminate all jobs (Tr. 122).

## V. *FINDINGS OF THE ALJ*

On July 30, 2010, ALJ Victor L. Horton entered his decision finding that plaintiff has

6

not engaged in substantial gainful activity since April 21, 2006, the amended alleged disability onset date, because the work activities after that date did not rise to the level of substantial gainful activity (Tr. 29). The ALJ found that plaintiff's severe impairments include hemoglobin sickle cell disease, obesity, and bipolar disorder with psychosis/schizophrenia; and that plaintiff's non-severe impairments include asthma, sleep disorder, ankle injury, and back/neck impairment (Tr. 29-30). The ALJ found that no impairment meets or equals the severity requirements of a Listing (Tr. 30-32). The ALJ found that plaintiff retains the ability to perform simple, light work with task-oriented contact with supervisors and co-workers (Tr. 32-37). Although the ALJ conceded that plaintiff cannot return to any of her past relevant work (Tr. 37), the judge found that plaintiff could perform other jobs that exist in significant numbers in the national economy (Tr. 38). Therefore, the ALJ concluded that plaintiff is not disabled (Tr. 38).

## VI. MEDICAL OPINIONS

Plaintiff argues that the ALJ erred in weighing the medical opinions. In response, the Commissioner states that the ALJ did consider the opinions of the treating, examining, and consulting medical sources within the context of the record as a whole.

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, describing what an individual can do despite a severe impairment, specifically an individual's physical or mental abilities to perform work-related activities on a sustained basis. SSR 96-5; see 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). Generally, the opinions of an examining psychologist or physician should be given greater weight than the opinions of a source who had not examined the individual. Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003).

The Eighth Circuit has acknowledged that a plethora of opinions, "admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain" Clevenger v. Soc. Sec. Admin., 567 F.3d. 971, 976 (8th Cir. 2009); and that,

7

for example, "[t]he ability to perform sporadic light activities does not mean that [plaintiff] is able to perform full time competitive work." Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) (citing Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998). Nevertheless, a plaintiff's activities should be considered by the ALJ, and a reviewing court should evaluate the ALJ's credibility determination, based in part on daily activities, under the substantial evidence standard. See McDade v. Astrue, 720 F.3d 934, 998 (8th Cir. 2013). In McDade, the court held that the ALJ's credibility finding was supported by substantial evidence when, among other factors, the ALJ considered that the plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with the use of an electric cart." Id. Similarly, in Clevenger, supra, the court held that it was "not unreasonable" for the ALJ to rely on evidence of the plaintiff's daily activities in finding that her assertion of disabling pain was not entirely credible. Clevenger v. Soc. Sec. Admin., 567 F.3d. at 976 .

Here, the medical record includes not only treatment records but also medical opinions from a psychological consultant, plaintiff's treating psychiatrist, and an examining psychologist. The medical opinions often contain conflicting observations.

On June 28, 2006, Stanley Hutson, Ph.D., a State of Missouri Disability Determination Services (DDS) psychological consultant, opined that plaintiff's mental impairments cause moderate functional limitations and some moderate work-related limitations (Tr. 363-78).

On August 9, 2006 and October 17, 2008, Joseph Parks, M.D., plaintiff's treating psychiatrist, completed *Medical Assessment Of Ability To Do Work-Related Activities-Mental* forms. Dr. Parks opined that plaintiff has poor or no ability to perform most work-related tasks (Tr. 397-98, 470-72). On November 15, 2006, December 20, 1996, January 26, 2007, and August 23, 2007, the psychiatrist opined that plaintiff is completely disabled or completely impaired (Tr. 418, 419, 420, 716).

On December 3, 2007, plaintiff underwent a consultative psychological examination

by Laura L. Brenner, Ph.D., during which plaintiff exhibited bizarre behavior. The examiner found it difficult to determine plaintiff's functional ability given significant inconsistencies between plaintiff's presentation and her medical record. Dr. Brenner found plaintiff quite impaired based upon her presentation at the examination but raised questions as to malingering or emphasizing symptoms. The examiner noted that it is uncommon to find someone living outside an institution with the level of impairment demonstrated by plaintiff at the examination (Tr. 458-61).

Dr. Brenner performed a second consultative psychological examination on October 11, 2009. Again, plaintiff's behavior was bizarre and inconsistent with records from Dr. Parks. Furthermore, on a Minnesota Multiphasic Personally Inventory-2-RF, plaintiff's responses resulted in an invalid profile. Plaintiff generated a much larger-than-average number of infrequent responses to the test, and she reported a much larger-than-average number of symptoms, which are rarely described by individuals with genuinely severe psychopathology. The examiner concluded that plaintiff's responses suggested that she was over reporting her symptoms (Tr. 639-47).

Plaintiff argues that the ALJ erred in not giving controlling weight, or at least significant weight, to Dr. Parks' opinions, and that the judge should have given significant weight to Dr. Brenner's opinions. In response, the Commissioner argues that the ALJ discounted the opinions of both Dr. Parks and Dr. Brenner after reviewing the record as a whole, including the objective medical evidence. Additionally, the Commissioner observes that the ALJ based his residual functional capacity, at least in part, on the treating psychiatrist's opinions

An ALJ does not have to rely entirely on a doctor's opinion, nor is he or she limited to a simple choice of the medical opinions of record when he or she formulates the residual functional capacity. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the [plaintiff's] physicians") (internal citations omitted). Chapo v. Astrue, 682 F.3d

9

1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between a residual functional capacity finding and a specific medical opinion on the functional capacity in question."). The RFC assessment is specifically reserved to the Commissioner and the ALJ, not a plaintiff's doctors. The Commissioner uses medical sources to "provide evidence" about several factors, including residual functional capacity, but the "final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2).

An ALJ may make his own assessment based on his review of the record as a whole. Steed v. Astrue, 524 F.3d 872, 865 (8th Cir. 2008) (ALJ's residual functional capacity finding based upon diagnostic tests and examination results); Halverson v. Astrue, 600 F.3d 922, 933-34 (8th Cir. 2010).

Here, after discussing in detail the medical evidence and considering plaintiff's subjective complaints and her credibility, the ALJ concluded that the record was not consistent with the level of disability described by Dr. Parks and Dr. Brenner.

An ALJ's decision should reflect a careful consideration of plaintiff's subjective complaints in light of the record as a whole when formulating the RFC. Wiese v. Astrue, 552 F.3d 728, 733-34 (8th Cir. 2009) (disagreeing with Wiese's contention that the ALJ's credibility findings were conclusory and insufficiently explained; noting a significant portion of the decision was devoted to a discussion of credibility, treatment history). Pain and mental limitations are a subjective experience, and in recognition of this fact, regulations require the ALJ to analyze the credibility of a plaintiff's subjective complaints of pain by assessing: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000); 20 C.F.R § 416.928.

Here, the ALJ noted that plaintiff did not treat her mental problems over a substantial

period of time and that she has a history of non-compliance. The ALJ found that plaintiff's treatment is not consistent with her allegations. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997). ("[Plaintiff's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits.").

The ALJ considered plaintiff's daily activities and found that they contradicted plaintiff's allegations of disability. In a credibility analysis, an ALJ's consideration of daily activities is appropriate because allegations of disabling symptoms may be discredited by such evidence. Benskin v Bowen, 830 F.2d 878, 883 (8th Cir. 1987).

The ALJ correctly found that there is evidence of symptom-magnification and prescription-medication abuse, both of which detract from plaintiff's credibility.

I find the ALJ's determination as to the weight to be given to the medical opinions here is supported by substantial evidence as a whole.

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision finding plaintiff not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

March 13, 2014
Kansas City, Missouri